1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

LEO MONTOYA,

7
                                        Plaintiff,

8          v.

9    CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

10
                                        Defendant.

11

Case No. 3:14-cv-05503-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15      Plaintiff has brought this matter for judicial review of defendant's denial of his

16   applications for disability insurance, disabled widower's and supplemental security income

17   ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local

18   Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate

19   Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that

20   for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

21                          FACTUAL AND PROCEDURAL HISTORY

22      On February 3, 2010, plaintiff filed an application for SSI benefits, and on June 20, 2011,

23   he filed applications for disability insurance and disabled widower's benefits, alleging in each

24   application that he became disabled beginning September 27, 2007. *See* Dkt. 13, Administrative

25   Record ("AR") 45. Those applications were denied upon initial administrative review on June

26

ORDER - 1

28, 2010 and on reconsideration on November 5, 2010. *See id.* A hearing was held before an administrative law judge ("ALJ") on March 14, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert and a lay witness. *See* AR 891-951.

In a decision dated June 12, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 45-62. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 15, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 7; 20 C.F.R. § 404.981, § 416.1481. On June 27, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on September 9, 2014. *See* Dkt. 13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the opinions of Vincent F. Phillips, M.D., and Richard Coder, Ph.D.; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; and (4) in posing an improper hypothetical question to the vocational expert at the hearing. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore finds defendant's decision to deny benefits should be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*,

ORDER - 2

359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal

standards were not applied in weighing the evidence and making the decision.") (citing *Brawner*

*v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

      Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation

omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record."). "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.    The ALJ's Evaluation of the Medical Evidence in the Record

      The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them. It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
> not try the case de novo, neither may it abdicate its traditional function of review. It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

ORDER - 4

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.   Dr. Phillips

With respect to the opinion evidene from Dr. Phillips, the ALJ found as follows:

In have considered the opinion evidence in the medical record, and specifically have considered the opinion of Vincent Phillips, M.D[.], a board-certified physician at SeaMar, where the claimant was treated (Exhibit 26F). Dr. Phillips opined that the claimant's most significant medical problem is his diabetes mellitus, and that despite treatment, he has not been able to obtain any degree of stability. Dr. Phillips opined that it is very unlikely that the claimant would be able to perform any type of full-time work activity as of December 2008, and that he likely would not even be able to sustain sedentary work. Dr. Phillips opined that even if he could have performed such a job, he would have had difficulty with absenteeism because of flares of his various problems, such as diabetes and headaches, and that his symptoms would have adversely affected his ability to concentrate and remain on task (Exhibit 26F/3). I assign the opinions of Dr. Phillips some weight. I note that Dr. Phillips based his opinions of his experience and professional expertise, however his representations about the claimant's abilities and limitations in 2008 onward simply do not match the medical record. First, the claimant's examination with Dr. Coder indicated a higher level of functioning. In that report, the claimant reported being able to perform a wide range of activities of daily living, such as being able to do chores, to clean, go grocery shopping and take care of his personal care (Exhibit 15F/4). The claimant's treatment records from SeaMar from 2008 indicate that he has a higher level of physical functioning as well. In a December 2008 physical examination, the claimant

ORDER - 5

presented with few problems, other than shoulder pain and a limited range of motion (Exhibit 1F/80). While this indicates some limitations, it does not indicate such a strong limitation as to totally preclude the claimant from all work activity. By March 2011, the claimant's physical examinations from SeaMar indicated even fewer clinical signs of impairment, and the claimant had stopped complaining of shoulder pain (Exhibit 21F/43).

AR. 57. Plaintiff argues the ALJ failed to give proper consideration to Dr. Phillips opinion here. The Court disagrees.

The Court does agree with plaintiff that the activities he reported being able to perform to Dr. Coder fail to necessarily indicate a greater level of functioning, as there is no indication as to the frequency or extent plaintiff engaged in those activities. *See* Dkt. 568. However, the ALJ was not remiss in rejecting the opinion of Dr. Phillips on the basis that plaintiff's treatment records overall fail to support the severity of functional limitation indicated in that opinion, including Dr. Phillips' own progress notes. *See* AR 18, 184-85, 187-91, 197-200, 202-07, 209-11, 215-19, 221-22, 225-26, 230-35, 237-39, 241-43, 249-52, 254-55, 258-65, 269, 271-74, 279-86, 289-94, 311, 314-15, 458, 500, 605-06, 608-46, 650-61, 787-89, 793, 832, 834-35, 837-38, 840-50, 866-69; *Batson*, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings or "by the record as a whole").

Pointing to Dr. Phillips' opinion on this issue, plaintiff argues there was no improvement in his condition during the years 2010 and 2011. But again treatment notes for that period in the record before the ALJ, and even thereafter, belie that opinion and plaintiff's argument, or at the very least fail to support the deterioration Dr. Phillips and plaintiff assert occurred, such that the level of functional limitation Dr. Phillips found is supported. *See* AR 184-85, 187-91, 197-200, 202-7, 209, 605-06, 608-46, 650-61, 787-89, 793, 832, 834-35, 837-38, 840-50, 866-69. Lastly, plaintiff appears to argue the ALJ erred in finding his headaches to be non-severe impairment given Dr. Phillips' opinion, but points to no objective medical evidence – including Dr. Phillips'

ORDER - 6

own progress notes – to show plaintiff's headaches actually had more than a minimal impact on

his ability to perform basic work activities.[2] *See* Dkt. 14, p. 7 (quoting 780-81, 887).

B. <u>Dr. Coder</u>

In terms of the medical opinion evidence from Dr. Coder, the ALJ found in relevant part:

On June 5, 2010, the claimant had a psychological diagnostic evaluation by
Richard Coder, Ph.D. (Exhibit 15F). Dr. Coder saw the claimant because of the
claimant's struggles with pain, depression, anxiety, irritability, anger and
frustration (Exhibit 15F/1). The claimant reported being able to perform
household chores and being able to care for his daughter, and he reported solid
social skills, as he has a few close friends. He reported being able to perform a
wide range of activities demonstrating sound concentration, persistence and
pace, including performing hobbies such as woodworking, watching TV,
driving[,] doing laundry, cooking and going on shopping excursions (Exhibit
15F/4). Dr. Coder performed a mental status examination of the claimant,
noting that the claimant presented as overweight, but otherwise normal, with
good eye contact, appropriate facial expressions and no evidence of
psychomotor agitation or retardation. The claimant presented with a pleasant
and cooperative attitude and behavior, and exhibited a normal stream of
mental activity and speech. Dr. Coder also noted that the claimant's thought
content was appropriate and free of any delusions. The claimant stated that his
current mood was "irritable," although his affect differed from his mood in
that he appeared quite calm. Dr. Coder found the claimant's intellectual
functioning appeared to be within the average range as evidenced by

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is
disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any
particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.
*See id.* At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. §
404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or
physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); *see also*
Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. An impairment is not severe only if the evidence
establishes a slight abnormality that has "no more than a minimal effect on an individual['s] ability to work." SSR
85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841
F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving  his "impairments or their symptoms affect [his]
ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v.
Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). With respect to plaintiff's headaches, the ALJ found:

I find the claimant's headaches are nonsevere impairments, because they do not cause
significant limitations in the claimant's ability to perform basic work activities. A former
client of the claimant, who hired him to perform some remodeling work, reported that the
claimant has in the past, complained of severe, debilitating headaches (Exhibit 10E/1).
However, the medical record does not contain any objective evidence indicating that these
headaches cause functional limitations. Accordingly, I find that the claimant's headaches are
nonsevere impairments.

AR 48. As noted above, other than Dr. Phillips' own discredited opinion, plaintiff points to no objective medical
evidence in the record to show his ability to perform basic work activities was actually impacted by his headaches.

ORDER - 7

vocabulary and ability to express thoughts. The claimant's memory was intact, and his fund of knowledge was consistent with education level and socioeconomic background. The claimant had largely good calculation abilities, making only 1 error on serial 7s. The claimant's concentration abilities were intact, as evidenced by his ability to spell "world" forwards and backwards (Exhibit 15F/2-3). Dr. Coder diagnosed the claimant with mental health impairments of a pain disorder due to a general medical condition, and a generalized anxiety disorder (Exhibit 15F/4).

. . .

The opinion of [Dr.] Coder . . . is assigned great weight . . . Dr. Coder opined that the claimant's ability to reason is good, and that he has good judgment. Dr. Coder opined that based on the mental functioning testing, the claimant [sic] good understanding and a good fund of knowledge, and has the ability to execute [a] simple 3-step direction as well as the ability to follow complex instructions. Dr. Coder opined that the claimant's memory functioning is poor, although his working memory is fair. Dr. Coder opined that the claimant's sustained concentration and persistence is good, and that his social interaction and interpersonal relationships are good. Dr. Coder opined that the claimant's ability to adapt to routine changes is likely impacted by his reported pain and anxiety. Finally, Dr. Coder opined that the claimant's ability to manage benefits in his own best interest is satisfactory (Exhibit 15F/5). These opinions of Dr. Coder are assigned great weight. Dr. Coder based his opinions on his own evaluation of the claimant, which included a comprehensive mental status examination. Furthermore, Dr. Coder is an expert in his field and based his findings on his professional expertise. However, Dr. Coder also assigned the claimant a [global assessment of functioning ("GAF")] score of 45[3], which indicates serious impairments (Exhibit 15F/5). Dr. Coder's GAF score is assigned little weight, as it is inconsistent with the medical evidence in the record, including the findings in Dr. Coder's own evaluation of the claimant.

AR 55-58. Plaintiff argues that in rejecting the GAF score of 45, the ALJ improperly "cherry-picked" findings supportive of the decision to deny benefits, while leaving out those tending to

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). Further, as "a tool for reporting the clinician's judgment of the individual's overall level of functioning," it "reflects a snapshot of a claimant's presentation on the day of the examination." *Wentzek v. Colvin*, 2013 WL 4742993, *8 (D.Or. Sept. 3, 2013) (quoting *Davis v. Astrue*, 2012 WL 4005553, *9 (D.Or. June 12, 2012), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (quoting *Chapman v. Astrue*, 2009 WL 3046025, *4 (D.Or. July 30, 2009); and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM") 32 (4th ed. 2000) (internal quotations omitted))). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Pisciotta*, 500 F.3d at 1076 n.1 (quoting DSM (Text Revision 4th ed. 2000) at 34).

ORDER - 8

1   support a determination of disability. Dkt.14, p. 10.

2          It is not "cherry-picking," however, to discount a medical source's opinion on the basis

3   that it is inconsistent with that source's clinical findings or with the objective medical evidence

4   in the record as a well, which as pointed out by the ALJ do not support the level of severity

5   indicated by the assessed GAF score. *See* AR 565-69; *Batson*, 359 F.3d at 1195 (ALJ need not

6   accept medical opinion if inadequately supported by clinical findings or "by the record as a

7   whole"). Nor, other than his own self-reports to Dr. Coder, does plaintiff point to any evidence

8   that he is in fact disabled due to his mental impairments. Given that as discussed below the ALJ

9   properly discounted plaintiff's credibility, the Court finds no error on the ALJ's part in giving

10  greater weight to Dr. Coder's objective clinical findings than the GAF score he assessed and the

11  subjective reporting by plaintiff it represents.

12  II.     The ALJ's Assessment of Plaintiff's Credibility

13         Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at

14  642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580.

15  In addition, the Court may not reverse a credibility determination where that determination is

16  based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for

17  discrediting a claimant's testimony should properly be discounted does not render the ALJ's

18  determination invalid, as long as that determination is supported by substantial evidence.

19  *Tonapetyan* , 242 F.3d at 1148.

20         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

21  reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

22  testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also*

23  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

ORDER - 9

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ in this case discounted plaintiff's credibility in part because his allegations of disabling symptoms and limitations were not fully supported by the objective medical evidence in the record. *See* AR 52-55. A determination that a claimant's subjective complaints are inconsistent with clinical findings can satisfy the clear and convincing requirement. *See Regennitter v. Commissioner of Social Security Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues the ALJ's credibility determination as a whole is fatally flawed in light of his failure to properly reject the opinions of Dr. Phillips and Dr. Coder. But because as discussed above the ALJ did not so err, inconsistency with the objective medical evidence in the record is a proper basis for finding plaintiff to be less than fully credible.

The ALJ also discounted plaintiff's credibility in part on the basis that the record fails to show much in the way of treatment for his allegedly disabling mental health impairments. *See* AR 55-56. Here too the ALJ did not err finding plaintiff to be less than fully credible for this reason, and indeed plaintiff does not specifically challenge that finding. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). (failure to assert good reason for not seeking treatment "can cast

ORDER - 10

doubt on the sincerity of the claimant's pain testimony"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain).

The ALJ further noted plaintiff's medical records indicated his physical condition had improved over time. *See* AR 55. This constitutes a valid basis for discounting his credibility, which again plaintiff does not expressly challenge in his opening brief. *See Morgan*, 169 F.3d at 599; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see also Carmickle v. Commissioner of Social Security Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); *Paladin Associates., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

The Court does agree with plaintiff that evidence of his activities of daily living in the record fail to show he necessarily performed them at a level or frequency sufficient to establish transferrable work skills or in a manner that otherwise contradicts her testimony. *See* AR 55-56, 115-30, 154, 157-64, 168-69, 568, 919, 928-29; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 and n.7. Nevertheless, the fact that one of the reasons the ALJ gave for discounting plaintiff's credibility was improper does not render the ALJ's credibility

1    determination invalid, as long as it is supported by substantial evidence in the record as in this

2    case. *Tonapetyan*, 242 F.3d at 1148; *see also Bray v. Commissioner of Social Security Admin.*,

3    554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting

4    claimant's credibility, he presented other valid, independent bases for doing so, each with "ample

5    support in the record").

6    III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

7            Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

8    take into account," unless the ALJ "expressly determines to disregard such testimony and gives

9    reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

10   In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

11   germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

12   link his determination to those reasons," and substantial evidence supports the ALJ's decision.

13   Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*,

14   694 F.2d at 642.

15           The record contains a number of lay witness statements as well as lay witness testimony,

16   which the ALJ largely rejected. *See* AR 59-60, 115-22, 144-47, 936-43. Plaintiff does not offer a

17   direct challenge to the reasons the ALJ gave for rejecting the lay witness evidence, but instead

18   generally asserts that evidence is consistent with her own testimony, the opinion of Dr. Phillips

19   and the GAF score Dr. Coder assessed. As discussed above, however, the ALJ did not err either

20   in rejecting Dr. Phillips' opinion and Dr. Coder's GAF score or in finding plaintiff to be less than

21   fully credible concerning her subjective complaints. Accordingly, the Court finds plaintiff has set

22   forth no valid basis for finding any error in the ALJ's findings here.

ORDER - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

IV.   The ALJ's Step Five Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the residual functional capacity:

**. . . to perform light work . . . meaning that the claimant can lift 20 pounds occasionally and 10 pounds frequently. The claimant also can perform occasional overhead reaching bilaterally, and can perform simple, routine, and repetitive tasks. The claimant can have occasional interaction with the public. The claimant can perform occasional climbing of ladders, ropes and scaffolds, frequent climbing of ramps and**

ORDER - 13

**stairs, and frequent balancing, stooping, kneeling, crouching, and crawling. The claimant can additionally perform occasional reaching overhead bilaterally, as well as occasional near acuity viewing. The claimant should avoid concentrated exposure to extreme cold, extreme heat, vibration and hazards. The claimant can also perform frequent fingering.**

AR 51 (emphasis in original). If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 947-48. In response to that question, the vocational expert testified that an individual with those limitations would be able to perform other jobs. *See* AR 946-48. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of

ORDER - 14

performing other jobs existing in significant numbers in the national economy. *See* AR 61-62. Plaintiff argues the ALJ erred in relying on the vocational expert's testimony because the errors the ALJ committed in evaluating the medical and other evidence in the record resulted in the posing of an inaccurate hypothetical question. But as discussed above, no such errors have been established and therefore the ALJ's step five determination is without error as well.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 26th day of March, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15